**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| YORAM KAHN, individually and on behalf of all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | Case No. 22-cv-04178 |
| v. | ) ) | Judge Ronald A. Guzman |
| TARGET CORPORATION, | ) ) | Magistrate Judge Gabriel A. Fuentes |
| Defendant. | ) ) ) ) | |

---

**DEFENDANT TARGET CORPORATION'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. SECTION
1404(a) OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO RULE 12(b)(6)**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

SUMMARY OF THE COMPLAINT .............................................................................. 3

ARGUMENT .................................................................................................................... 5

I.  This Court Should Transfer This Case to the District of Minnesota ................................ 5

    A.  Venue is Proper in this District and in the District of Minnesota .......................... 7

    B.  Transferring the Case to the District of Minnesota Would Be More
        Convenient for the Parties and Witnesses ............................................................. 7

    C.  The Interests of Justice Weigh in Favor of Transfer ............................................. 11

II.  In the Alternative, This Court Should Dismiss Pursuant to Rule 12(b)(6) ..................... 13

    A.  Plaintiff Fails to State a Claim under ICFA ......................................................... 14

        1.  Plaintiff Fails to Plausibly Allege That Target Made a Deceptive
            Statement or Intended for Plaintiff to Rely on Any Alleged
            Deception. .............................................................................................. 15

        2.  Plaintiff Fails to Plausibly Allege that the Price Discrepancy
            Proximately Caused Him Harm. ............................................................. 18

    B.  Plaintiff Fails to State a Claim Under IUDTPA .................................................. 19

    C.  Plaintiff Fails to State a Claim for Unjust Enrichment ........................................ 20

    D.  Plaintiff Fails to State a Claim Under the Laws that are "Similar" to ICFA
        and IUDTPA. ........................................................................................................ 20

CONCLUSION ................................................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        **Page(s)**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ..............................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................14

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   216 Ill.2d 100 (Ill. 2005)...................................................................................20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................13

*Benson v. Fannie May Confections Brands, Inc.*,
   944 F.3d 639 (7th Cir. 2019) .............................................................................20

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .................................................................14, 19, 20

*Cleary v. Philip Morris, Inc.*,
   656 F.3d 511 (7th Cir. 2011) .............................................................................20

*D5 Ironworks, Inc. v. Local 395 Ironworkers*,
   No. 16cv2163, 2016 WL 2733307 (N.D. Ill. May 11, 2016) ...........................5, 10

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................7

*F.T.C. v. American Tax Relief LLC*,
   No. 10cv6123, 2011 WL 2893059 (N.D. Ill. July 20, 2011) .............................8, 9

*Halperin v. Int'l Web Servs., LLC*,
   123 F. Supp. 3d 999 (N.D. Ill. 2015) .................................................................21

*Kahn v. Walmart*,
   No. 22cv04177 (N.D. Ill. filed Aug. 9, 2022).......................................................1

*Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*,
   392 Ill. App. 3d 1 (1st Dist. 2009) .....................................................................19

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
   809 F. Supp. 2d 857 (N.D. Ill. 2011) .................................................................20

*Morris v. Am. Bioscience, Inc.*,
   No. 03 C 7525, 2004 WL 2496496 (N.D. Ill. Nov. 3, 2004)...........................5, 8, 20

*Mulligan v. QVC, Inc.*,
  382 Ill. App. 3d 620 (1st Dist. 2018) ...............................................................2, 15

*Robinson v. Walgreen Co.*,
  No. 20cv50288, 2022 WL 204360 (N.D. Ill. Jan. 24, 2022) .....................................19

*Spartan SP Investor, LLC v. Yagen*,
  No. 13cv6882, 2014 WL 132071 (N.D. Ill. Apr. 2, 2014) .....................................5, 6

*Spector v. Mondelez Int'l, Inc.*,
  No. 15cv4298, 2017 WL 4283711 (N.D. Ill. Sept. 27, 2017).....................................14

*Steinberg v. Chicago Med. Sch.*,
  69 Ill. 2d 320, 371 N.E.2d 634 (1977) ...............................................................16

*Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*,
  No. 09cv2123, 2011 WL 1357516 (N.D. Ill. Apr. 11, 2011) ...................................10

*Taylor v. Midland Funding, LLC*,
  94 F. Supp. 3d 941 (N.D. Ill. 2015) ...................................................................8

*Tech. Concepts L.P. v. Zurn Indus., Inc.*,
  No. 02cv5150, 2002 WL 31433408 (N.D. Ill. Oct. 31, 2002)...................................11, 12, 13

*Tudor v. Jewel Food Stores, Inc.*,
  288 Ill. App. 3d 207 (1st Dist. 1997) ...............................................................2, 14, 15, 18

*Wakley v. Frontera Produce, Ltd.*,
  No. 13cv5597, 2014 WL 12767672 (N.D. Ill. Jan. 15, 2014) .....................................6, 7

*Wepay Glob. Payments LLC v. PNC Bank, N.A.*,
  No. 21 C 5052, 2022 WL 1016612 (N.D. Ill. Apr. 5, 2022).....................................8, 10, 11

*Wright v. Associated Ins. Co.*,
  29 F.3d 1244 (7th Cir. 1994) ...........................................................................16

**Statutes, Rules & Regulations**

815 ILCS 510/3 ...................................................................................................19

28 U.S.C. § 1391 .................................................................................................7

28 U.S.C. § 1404(a) ............................................................................................5

Federal Rule of Civil Procedure 9(b) ...................................................................14

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 13

**Other Authorities**

https://www.ncagr.gov/paffairs/AgReview/articles/2015/11-15-price-scanner-errors.htm ...........................................................................................5, 15

https://www.ncagr.gov/paffairs/release/2022/Twenty-twostorespayfinesforpricescanningerrors.htm ...........................................4, 15

https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf ...................12

## INTRODUCTION

Plaintiff Yoram Kahn ("Plaintiff") is a citizen of Ohio who was travelling through Illinois in August 2022.  While in Illinois, he visited a Target Corporation ("Target") store in suburban Niles and purchased thirteen items—a mixture of diapers, crackers, candy, coffee, and fruit.  All were priced under $10, and all but two were priced under $5.  Two of those thirteen items—a box of Ritz "Original Crackers" and a box of Ritz "Hint of Salt Crackers"—allegedly reflected a different price on his receipt ($3.79) than appeared on the shelf ($3.49).  Plaintiff does not allege that he asked any employee about the 30-cent discrepancy in the prices or that he asked Target to honor the shelf prices through its well-known and publicized Price Match Guarantee.  Instead, Plaintiff took photographs with his receipt next to the shelf prices at the Niles store and filed this lawsuit a week later.  And based on his experience with two products in Niles, Illinois in August 2022, he purports to represent every purchaser of every product in every Target in the United States during a multi-year period who allegedly paid a higher price at checkout than appeared on the shelf.[1]

Plaintiff's claims fail as a matter of law and are subject to dismissal pursuant to Rule 12(b)(6).  Nonetheless, as a threshold matter and before addressing the substantive issues presented in Target's Motion to Dismiss, the Court should transfer this case to the District of Minnesota because venue is more appropriate in that jurisdiction.  Although Plaintiff made his purchases in Illinois, he is (i) an Ohio citizen who was merely passing through Illinois at the time, (ii) who purports to represent purchasers in every state, and (iii) who premises his claims on policies allegedly directed from Target's corporate headquarters in Minnesota.  Under these circumstances,

---

[1] The same day that he visited the Niles Target, he also visited the nearby Niles Walmart, purchased fifteen items (all priced under $5), took photographs with the receipt next to the shelf prices, and filed an identical lawsuit against Walmart.  That lawsuit, *Kahn v. Walmart*, No. 22cv04177 (N.D. Ill. filed Aug. 9, 2022), is pending in this District before Judge Ellis.

1

the more convenient forum for this lawsuit is the location of Target's corporate headquarters—the United States District Court for the District of Minnesota. Consequently, this Court should transfer this matter to the District of Minnesota for the convenience of the parties and the witnesses. But if it does not transfer this matter, it should dismiss it for failing to state a claim.

Plaintiff brings five overlapping counts on behalf of his purported classes: claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA") and "similar laws" (Counts I & III), claims under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq.* ("IUDTPA") and "similar laws" (Counts II & IV), and a claim for unjust enrichment (Count V). But each of these counts fails as a matter of law and should be dismissed for the same fundamental reasons: Plaintiff's own allegations demonstrate that Target's actions were not deceptive or unfair and that Target did not intend for Plaintiff to rely on any allegedly deceptive act or practice. Plaintiff does not allege that the prices displayed at checkout or on the receipt are different than what he was actually charged—the receipt, according to Plaintiff, is accurate. And the back of that receipt included a printout of the website address for Target's return policy. Moreover, Plaintiff affirmatively alleges that when a large number of Target's shelf prices were tested for accuracy, the shelf tags exceeded a 92% accuracy rate—which is a rate that Illinois courts have determined is sufficient to show that there was no intent to deceive, as a matter of law, even under a *more lenient*, no-set-of-facts pleading standard. *See Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 209 (1st Dist. 1997). Moreover, the allegations show that Plaintiff was aware of the pricing discrepancies before he made his purchases, and therefore those discrepancies were not the proximate cause of any harm. *See Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620 (1st Dist. 2018). Finally, the purchases were governed by Target's Price Match Guarantee—a condition of purchase that Plaintiff tries to plead around (but cannot).

2

## SUMMARY OF THE COMPLAINT

Plaintiff Kahn is a citizen of Ohio. Cmplt. ¶ 12. On August 2, 2022, he was traveling through Illinois when he stopped at the Target located at 6150 W. Touhy Ave. in Niles, Illinois, and purchased thirteen items. *Id.* ¶ 13. Plaintiff does not claim that he purchased these items in reliance on the labeling or packaging or Target's or the manufacturers' advertising; in reliance on the prices advertised online or on the Target App; or based on any personal preference regarding taste or quality or based on any particular need. Rather, Plaintiff alleges that he "considers Shelf Pricing when making his shopping decisions." *Id.* ¶ 24. "Shelf Pricing," according to Plaintiff, are "price advertisements on shelf signs and price displays" (*id.* ¶ 1), and "the Shelf Pricing in Target on August 2, 2022 materially drove his shopping decisions that day." *Id.* ¶ 24. He does not allege that the price was advertised *only* on the shelf, that the price was not advertised accurately elsewhere, or that there was no other way to ascertain the price before purchase.

His shopping decisions that day were memorialized on the receipt he received at checkout: Pampers for $9.59, two boxes of Ritz crackers for $3.79 each, a box of Dots candy for $1.29, Reese's candy for $.99, two boxes of Sour Punch candy for $.99 each, Raisinets candy for $.99, a box of Mike & Ike candy for $1.29, Kenny's candy for $2.99, a container of Maxwell House coffee for $7.79, a single grapefruit for $.99, and a single banana for $.19. *Id.* ¶ 23a. Of these thirteen items, the prices on the shelf for two of them allegedly were mismarked: Plaintiff contends that the shelf prices for the boxes of Ritz Original Crackers and Ritz Hint of Salt Crackers were $3.49 for each, but that he was charged $3.79 for each. *Id.* ¶¶ 23a-b. He claims that $3.79 was "more [than] the value" of the crackers, and he "would not have purchased" the crackers for an additional $.30. *Id.* ¶ 26.

Following his purchases, he returned to the alleged shelf locations for the crackers and photographed his receipt next to the allegedly mismarked shelf prices. But he does not allege that

he took any further action.  *See id.* ¶¶ 23-27.  For instance, he does not allege that he: (i) asked a store attendant about the alleged price differences; (ii) returned to checkout to request a refund in the amount of the variances; (iii) attempted to return the crackers for a refund; or (iv) attempted to invoke Target's Price Match Guarantee (*see* Section II below).  *Id.*

Plaintiff further alleges "upon information and belief," based on "investigation conducted by Plaintiff's counsel," that Target supposedly (i) "knows that it overcharges consumers" as a result of discrepancies between the shelf price and the checkout price, (ii) "has continued to allow its stores" to do so, and (iii) "elects not to implement institutional systemic controls to prevent such practices."  *Id.* ¶ 31.  Plaintiff cites in support of these allegations Plaintiff's Counsel's experience with shelf price discrepancies in the purchases of twelve other products (out of how many total purchases, the Complaint does not say) in three other Target locations in Illinois.  *Id.* ¶¶ 37-39.  Plaintiff further cites Plaintiff's Counsel's experiences with shelf price discrepancies in "Florida, Indiana, Maryland, New Jersey, New York, and other states," specifically including Pennsylvania and North Carolina.  *Id.* ¶¶ 40-46.

Regarding North Carolina, Plaintiff alleges that in February 2022, the North Carolina Department of Agriculture and Consumer Services allegedly fined Target for shelf price discrepancies at a store in Wake, North Carolina.  *Id.* ¶ 34.  But the press release cited by and incorporated into the Complaint lists 22 retailers/locations, only one of which was a Target location.  And the inspection of that lone Target location found low error rates:  "a 6-percent error rate based on six overcharges in a 100-item lot," "an 8-percent error rate based on 24 overcharges in a 300-item lot," and "a 3.67-percent error rate based on 11 overcharges in a 300-item lot."[2]  A second release from 2015 lists similarly low error rates for another Target location:  "an error rate

---

[2] https://www.ncagr.gov/paffairs/release/2022/Twenty-twostorespayfinesforpricescanningerrors.htm (cited at Cmplt. ¶ 34 n.6).

of 6 percent, based on six overcharges in a 100-item lot," "an error rate of 3 percent, based on nine overcharges in a 300-item lot," and a later "1.67 percent error rate."[3]

Based on Plaintiff's purchases at one Illinois store, Plaintiff purports to assert claims on behalf of nationwide, Illinois-only, and multi-state classes under ICFA and "similar laws," IUDTPA and "similar laws," and for unjust enrichment. Cmplt. ¶¶ 47-50.

## ARGUMENT

## I.  This Court Should Transfer This Case to the District of Minnesota

When presented with simultaneously filed motions to dismiss and to transfer venue, this Court has routinely granted the motion to transfer as a threshold procedural issue so that the transferee court in the appropriate jurisdiction has the opportunity to rule on the substantive issues presented in the motion to dismiss.  *See, e.g.*, *D5 Ironworks, Inc. v. Local 395 Ironworkers*, No. 16cv2163, 2016 WL 2733307, at *4 (N.D. Ill. May 11, 2016) (Guzman, J.); *Morris v. Am. Bioscience, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *2-5 & n.4 (N.D. Ill. Nov. 3, 2004) (Guzman, J.).

Under 28 U.S.C. § 1404(a), the Court may transfer this action "to any other district or division where it might have been brought" if "the convenience of parties and witnesses [and] the interest of justice" so requires.  A party seeking transfer must show that (i) venue is proper in the transferor court and venue and jurisdiction are proper in the transferee court; (ii) transfer is for the convenience of the parties and witnesses; and (iii) transfer is in the interests of justice.  *Spartan SP Investor, LLC v. Yagen*, No. 13cv6882, 2014 WL 132071, at *3 (N.D. Ill. Apr. 2, 2014) (Guzman, J.).  "When deciding a motion to transfer venue, the court must accept as true all of plaintiffs' well-pleaded facts in the complaint, unless they are contradicted by affidavits or other

---

[3] https://www.ncagr.gov/paffairs/AgReview/articles/2015/11-15-price-scanner-errors.htm (cited at Cmplt. ¶ 34 n.7).

appropriate evidence from the defendant." *Wakley v. Frontera Produce, Ltd.*, No. 13cv5597, 2014 WL 12767672, at *2 (N.D. Ill. Jan. 15, 2014) (Guzman, J.)  All three requirements are satisfied here, and this case should be transferred to the District of Minnesota.

With regard to venue, Plaintiff has alleged that venue is proper in this Court.  Plaintiff has also alleged that Target is incorporated in and has its principal place of business within the District of Minnesota (which is true), and that Kahn is an Ohio citizen.  Cmplt. ¶12.  Venue and jurisdiction therefore would be proper there, too.

With respect to determining the convenience of the parties and witnesses, transfer is favored when taking into account: "plaintiff's forum choice, the situs of material events, access to sources of proof, [and] convenience of the witnesses and parties."  *Spartan*, 2014 WL 132071 at *3 (N.D. Ill. Apr. 2, 2014) (Guzman, J.).  Specifically, Plaintiff has no connection to the Northern District of Illinois and the situs of material events (Target's purportedly unlawful "pricing practices," according to Plaintiff) is Target's headquarters in the District of Minnesota.  Transfer to that District that will make the litigation more convenient for Target, no less convenient for Plaintiff, and neither party's access to documents or ability to marshal evidence is inconvenienced by a transfer.

With respect to the interests of justice, transfer is also favored when considering "docket congestion/speed to trial"; "familiarity with the relevant law"; "relative desirability of resolving controversies in each locale"; and "the relationship of each community to the controversy."  *Wakley*, 2014 WL 12767672 at *4.  As discussed below, there is less docket congestion in the District of Minnesota and Minnesota has a stronger interest in and connection to this lawsuit given the scope of Plaintiff's allegations.

### A.    Venue is Proper in this District and in the District of Minnesota

Venue is governed by Section 1391 of Title 28 of the United States Code. Pursuant to subsection (b), a civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or "(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See Wakley*, 2014 WL 12767672 at *1. Plaintiff alleges that venue is appropriate in the Northern District of Illinois pursuant to sections (b)(1), (b)(2), and (b)(3). *See* Cmplt. ¶¶ 9-11. For purposes of venue, a corporation is a resident of any state in which it is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(c)(2).

Based on the allegations, venue is also appropriate in the District of Minnesota. A corporation is "fairly regarded as at home" and subject to general jurisdiction in its "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiff alleges that Target is incorporated in Minnesota and that its principal offices are in and around Minneapolis, Minnesota. Cmplt. ¶ 14. This is true. *See, e.g., id.* ¶ 9 n.1, *citing* Form 10-K for Target Corporation dated March 9, 2022 (listing Minnesota as the state of incorporation and 1000 Nicollet Mall, Minneapolis, Minnesota, as the address of the principal executive offices).

### B.    Transferring the Case to the District of Minnesota Would Be More Convenient for the Parties and Witnesses

<u>First</u>, Plaintiff's decision to file in Illinois should be accorded little weight. Plaintiff has filed this case as a purported nationwide class action comprising "All persons who purchased merchandise from a Target store in the United States, within the applicable statute of limitations,

7

until the date notice is disseminated, and paid higher prices for merchandise than the advertised shelf-prices." Cmplt. ¶ 47.[4]  This Court and many others have held that "in class action suits[,] the weight given to the plaintiff's choice of forum is not substantial." *Morris*, 2004 WL 2496496 at *2 (Guzman, J.).  This is because, "[w]hen a nationwide class is alleged, less deference should be given to the plaintiff's choice of forum because any member of the class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds."  *Id.* at *2 (internal quotations omitted).[5]

Furthermore, Plaintiff is a citizen of Ohio.  Cmplt. ¶ 12.  As another court in this District explained just this year, "[w]here a plaintiff does not reside in his chosen forum, the deference owed his choice is 'substantially reduced.'"  *Wepay Glob. Payments LLC v. PNC Bank, N.A.*, No. 21 C 5052, 2022 WL 1016612, at *2 (N.D. Ill. Apr. 5, 2022) (Kocoras, J.).  Indeed, not only does Plaintiff not reside in Illinois, but his connection to Illinois is happenstance:  he alleges that he made his purchase "while traveling in Illinois." Cmplt. ¶ 13.  Consequently, Plaintiff's choice of forum is entitled to almost no weight.

<u>Second</u>, the situs of material events is in the District of Minnesota.  This is a deceptive advertising case:  Plaintiff alleges that Target has engaged in "unfair and deceptive practices" nationwide by "placing false and misleading advertisements on shelf signs, and price displays." Cmplt. ¶ 1.  As this Court explained in *F.T.C. v. American Tax Relief LLC*, No. 10cv6123, 2011

---

[4] Alternatively, Plaintiff seeks certification of two multistate classes comprising purchasers in as many as thirty-one different states or, in the alternative to that, a class of individuals who made purchases from Target in Illinois, which evidently would include individuals like Plaintiff who reside outside of Illinois. *See* Cmplt. ¶¶ 47-50.
[5] This Court later held in another putative class action, *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015) (Guzman, J.), that it would not discount plaintiff's choice of forum.  However, unlike here, the plaintiff in that case lived in Illinois and the defendant had "no relationship to [the transferee district] other than that it is named as a defendant in [another] case pending there."  *Id.* at 946.  Here, Plaintiff is a citizen of Ohio (not Illinois) and Target has a significant relationship with the transferee district:  Target's principal place of business is in the District of Minnesota, where it is also incorporated.

WL 2893059 (N.D. Ill. July 20, 2011) (Guzman, J.), "In a deceptive advertising case, the situs of material events is where the alleged acts or omissions giving rise to the deceptive advertising claim occurred. Deceptive advertising cases focus on the activities of the alleged wrongdoer, its employees and its documents." *Id.* at *4 (internal citations omitted). The "alleged acts or omissions giving rise to the deceptive advertising claim," according to Plaintiff, are the decisions made at Target's headquarters in the District of Minnesota.

This Court's decision in *American Tax Relief* is instructive. In that case, the FTC filed suit in the Northern District of Illinois against a company that was headquartered within the Central District of California. The FTC alleged that the company and its officers had made "false claims and material misrepresentations to consumers" about financial products and that these allegedly false and misleading statements were made "throughout the United States." *Id.* at *1. The defendants moved to transfer to the Central District of California, arguing their headquarters was the situs of material events. The FTC argued in response that because the defendant advertised in all fifty states, "the situs of material events could be considered as occurring anywhere, including Illinois." *Id.* at *4-5. This Court rejected the FTC's argument and accepted the defendants' arguments that "most, if not all, of [the] decisions [regarding sales and advertising] were made in California." *Id.* at *5.

Here, Plaintiff has filed suit against a company that is "incorporated in Minnesota" and has its "principal offices . . . in and around Minneapolis." Cmplt. ¶ 14. Like in *American Tax Relief*, the allegations are that the defendant's conduct occurs "in Illinois, this District, and throughout the United States." *Id.* Unlike in *American Tax Relief*, however, it is the Plaintiff who argues and alleges that decisions at issue were made in another District: Plaintiff alleges that Target has continued to "allow its stores" across the country to engage in the allegedly unlawful conduct *(id.*

9

¶¶ 31, 84, 105); that Target has failed to "implement institutional systemic controls" to address the alleged mislabeling of price tags and that this alleged failure is a common issue supporting class certification (*id.* ¶¶ 31, 53, 84); and that these alleged practices are "company-wide, pervasive, and continuous." *Id.* ¶¶ 84, 105. Plaintiff's theory is that there is nothing unique about his experience in Illinois because all decisions emanate from Target's principal place of business. Consequently, that is the situs of material events for Plaintiff's claims, and the District of Minnesota therefore has a "stronger relationship to the dispute." *Wepay*, 2022 WL 1016612 at *2 (quoting *Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, No. 09cv2123, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011)) (Kocoras, J.)).

Third, the relative ease and access to the sources of proof slightly favors transfer. As explained above, Plaintiff's theory of liability is premised on allegedly corporate-wide decisions that would have been made at Target's headquarters. Consequently, the relevant documents are located in and will be transmitted from in and around Minneapolis. However, as this Court explained in *D5 Ironworks*, "the Seventh Circuit [has] . . . held that modern technology renders the location of documents and other sources of proof only *minimally* important in the transfer analysis." 2016 WL 2733307 at *4 (Guzman, J.) (emphasis added) (alterations in original).

Fourth, convenience of the witnesses and parties favors transfer. Because "the corporate headquarters of [Target] is in [and around Minneapolis], the same city as is located the U.S. District Court for the [District of Minnesota] . . . . it is likely more convenient and cost-effective for [Target] to litigate there." *Wepay*, 2022 WL 1016612 at *3. If this case proceeds past the pleading stage, Target expects testimony may be required from the current Lead Business Partner for Store Operations and from the current Director of Compliance, Corporate Compliance or the Lead Compliance Consultant, Corporate Compliance, all of whom live in the Minneapolis area and work

at Target's headquarters. Ex. 1, Decl. of Amanda LeBlanc ("LeBlanc Dec."), at ¶ 5. Furthermore, depending on the scope of the claims that proceed, testimony may also be required from third parties who are former members of the Store Operations and Pricing Compliance Teams who remain in the Minneapolis area, including a recently retired former Senior Director, Compliance. *Id.*

In addition, in the event that it becomes necessary for employees who work at Target's nearly 2,000 stores in the United States to provide evidence and testimony regarding the circumstances surrounding shelf pricing practices in their particular stores, Minneapolis is a more convenient location for accommodating these individuals. Target has the facilities and logistical experience with bringing its employees to Minneapolis and can do so more cost effectively than elsewhere. *Id.* ¶ 6.

Moreover, there is no inconvenience to Plaintiff arising from a transfer: he has already demonstrated a willingness to travel (his alleged purchases were made "while traveling" through Illinois) and demonstrated a willingness to litigate outside of his home state of Ohio. *See* Cmplt. ¶¶ 12-13.

### C. The Interests of Justice Weigh in Favor of Transfer

First, docket congestion and likely speed to trial weigh in favor of transfer. In assessing this factor, this Court and other courts in this District look at two figures tracked by the Federal Judicial Center: the median time from filing to disposition and the median time from filing to trial. *See Tech. Concepts L.P. v. Zurn Indus., Inc.*, No. 02cv5150, 2002 WL 31433408, at *6 (N.D. Ill. Oct. 31, 2002) (Guzman, J.); *Wepay*, 2022 WL 1016612 at *4. Those statistics show that while the median time from filing to disposition in the Northern District of Illinois is a few days faster

11

(two-tenths of a month, *i.e.*, six days), the median time from filing to trial in the District of Minnesota is significantly faster—cases reach trial almost a <u>year</u> sooner.[6]

| Description | N.D. Ill. | D. Minn. |
|---|---|---|
| From Filing to Disposition (Civil) | 7.2 months | 7.4 months |
| From Filing to Trial (Civil) | 48.9 months | 39.6 months |

<u>Second</u>, familiarity with the relevant law is a neutral factor. Plaintiff alleges claims under the ICFA and "any state with similar laws," claims under the IUDTPA and "any state that has adopted similar UDTPA laws," and for unjust enrichment. Cmplt. ¶¶ 49, 50, 109-117. Plaintiff lists among those allegedly similar laws the laws of both Illinois and Minnesota. *Id.* ¶¶ 49 n.9, 50 n.10. Thus, according to Plaintiff, whether the case is litigated under Illinois law (with which this Court is presumably more familiar) or Minnesota law (with which a court in the District of Minnesota is presumably more familiar), the analysis will be the same.

<u>Third</u>, the relative desirability of resolving controversies in each locale and the relationship of each community to the controversy favors transfer to the District of Minnesota, and this Court's reasoning in *Tech. Concepts*, 2002 WL 31433408 at *7, explains why. In that case, the conduct at issue (patent infringement) was alleged to involve a product that is "distributed and sold throughout the United States." *Id.* at *7. The defendant (a corporation organized under Pennsylvania law with its principal place of business in Pennsylvania) sought transfer from this District to the Western District of Pennsylvania. *Id.* *1. This Court granted that motion, reasoning in part that because the conduct was alleged to occur nationwide, "several states, including

---

[6] https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf

Pennsylvania, presumably share Illinois' interest" in the lawsuit. *Id.* Moreover, this Court reasoned that patent suits "often focus on the activities of the alleged infringer, its employees, and its documents," making "the location of the infringer's princi[pal] place of business" the "critical and controlling consideration." *Id.* *3, *7. Consequently, this Court held that these factors "favor[ed] transfer." *Id.* *7.

While this is not a patent case, like in *Technical Concepts*, Plaintiff alleges that Target engages in deceptive conduct "throughout the United States" and seeks to represent a class of purchasers throughout the United States who were allegedly harmed by Target's pricing. Cmplt. ¶¶ 7, 21. As in *Technical Concepts*, several states therefore share Illinois' interest in the lawsuit. Also like the defendant in *Technical Concepts*, Target's headquarters is located in the proposed transferee forum, and like the plaintiff in *Technical Concepts*, Plaintiff's focus here is on the activities of the defendant and its employees and its documents at its principal place of business, which is supposedly the source from which the unlawful conduct is directed. *See* supra § II, p. 7. Thus, like in *Technical Concepts*, considerations of the desirability of resolving controversies in each locale and the relationship of each community to the controversy favors transfer.

Thus, for all of the foregoing reasons, this matter should be transferred to the United States District Court for the District of Minnesota.

## II.     <u>In the Alternative, This Court Should Dismiss Pursuant to Rule 12(b)(6)</u>

If the Court does not transfer this case, it should dismiss it on the merits for failure to adequately allege that Target committed any deception, intended for Plaintiff to rely on any deceptive act, or was the proximate cause of any harm to Plaintiff.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege facts—not mere "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action[,]" or naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

Plaintiff's ICFA and IUDTPA claims are subject to Rule 9(b)'s heightened pleading standard because the claims allege that Target engaged in fraud through allegedly knowing misrepresentations that Plaintiff characterizes as a "bait and switch." Cmplt. ¶¶ 1, 3, 5, 31;[7] *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (applying Rule 9(b)'s heightened pleading standard to ICFA and IUDTPA claims). "Rule 9(b) requires more than the who, what, where, when, and how concerning the alleged fraud; it also requires that the alleged facts show that fraud is [a] necessary or probable inference from those facts." *Spector v. Mondelez Int'l, Inc.*, No. 15cv4298, 2017 WL 4283711, at *1 (N.D. Ill. Sept. 27, 2017) (internal citations omitted).

## A. Plaintiff Fails to State a Claim under ICFA

To state a claim under ICFA (Count I), Plaintiff must allege with particularity in relevant part (i) a deceptive act or practice by the defendant, (ii) that the defendant intended the plaintiff to rely on the deception, and (iii) that the deception proximately caused Plaintiff actual damages. *See Camasta*, 761 F.3d at 738. Here, Plaintiff's ICFA claim fails because Plaintiff does not plausibly allege any of these three elements. The decisions in *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App.

---

[7] Plaintiff's conclusory and passing assertions that Target's conduct is also "unfair" (Cmplt. ¶¶ 1, 6, 30-31, 32, 61, 65) fail to state a claim under the unfairness prong of ICFA. As the Seventh Circuit stated in *Camasta*, "while [plaintiff] adds language of unfairness, his allegations of 'unfair practice' are clearly premised on the primary claim that [the defendant] utilized a fraudulent sales technique." 761 F.3d at 737. Like in *Camasta*, "simply adding [the word 'unfair'] does not alter the fact that [plaintiff's] allegations are entirely grounded in fraud under the ICFA." *Id.*

3d 207 (1st Dist. 1997) and *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620 (1st Dist. 2018) show why.

> **1.** *Plaintiff Fails to Plausibly Allege That Target Made a Deceptive Statement or Intended for Plaintiff to Rely on Any Alleged Deception*

In *Tudor*, a plaintiff sued Jewel Food Stores in a purported class action under ICFA because the checkout price plaintiff paid was higher than the shelf price that plaintiff saw. The trial court dismissed the complaint pursuant to 735 ILCS 5/2-615 for failure to state a claim, and the First District Court of Appeals affirmed the dismissal. The First District identified three reasons that the plaintiff had failed to adequately allege either that the price discrepancy was deceptive or that the defendant intended for the plaintiff to rely on any deception: the complaint included allegations that the shelf price was *right* more than 92% percent of the time, that the defendant offered a price-match policy, and that the plaintiff was provided with a receipt at checkout. *Tudor*, 288 Ill. App. 3d at 210. Those same facts are present here.

Like the plaintiff in *Tudor*, Plaintiff here was provided a receipt—he includes multiple photographs of it in his Complaint. *See* Cmplt. ¶¶ 23a-b. He does not allege that it was inaccurate.

Also like in *Tudor*, Plaintiff includes allegations showing that Target's shelf pricing is accurate at least 92% of the time. As discussed above, the North Carolina Department of Agriculture and Consumer Services press release cited by Plaintiff found that, when looking at purchases in multiple 100-item to 300-item lots, Target's shelf pricing was correct 92% to 98% of the time. *See* Cmplt. at ¶ 34 n.6 & n.7 (citing https://www.ncagr.gov/paffairs/release/2022/Twenty twostorespayfinesforpricescanningerrors.htm and https://www.ncagr.gov/paffairs/AgReview/articles/2015/11-15-price-scannererrors.htm). While Plaintiff's own receipt reflects a lower percentage, Plaintiff purchased only thirteen items—roughly 1/10th to 1/30th of the purchases that the North Carolina regulators deemed necessary each visit to accurately assess price accuracy.

15

Indeed, as reflected in Plaintiff's press releases, the North Carolina regulators made at least 1,100 total purchases to assess Target's price accuracy at two locations. *Id.*

Like the defendant in *Tudor*, Target also offers a Price Match Guarantee. While Plaintiff avoids specifically mentioning it in his Complaint, the Court can and should still consider it. Under Illinois law, Plaintiff's purchases were pursuant to a contract: the shelf price was "an offer" or "an invitation to deal on the advertised terms," and "when the merchant takes the money [there is] an acceptance of the offer to purchase." *Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 330, 371 N.E.2d 634, 639 (1977). When courts are asked to address an alleged breach of contract (which is what is alleged here), so long as the contract is "central to" the claim (which it is here), they consider the full contract and ***all*** of the material terms of that contract on a motion to dismiss even if each and every term is not specifically alleged in the complaint. *See, e.g.*, *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (affirming district court's consideration of full contract on motion to dismiss despite plaintiff's argument that the court should not have considered "those portions of the Agreement to which he did not refer in his complaint."). The purpose of this practice is to "prevent parties from surviving a motion to dismiss by artful pleading or failing to attach relevant documents." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (affirming district court's consideration of contract terms not included in complaint). By referencing only the *price* portion of the parties' agreement, Plaintiff "included with [his] complaint only those portions of the contract beneficial to [him.]" *Id.* But price is not the only material term.

Here, one of the material terms of the parties' contract was Target's Price Match Guarantee. Target's Price Match Guarantee is well publicized. LeBlanc Dec. at ¶ 8. For instance, the Price Match Guarantee is available on Target's website (Target.com/pricematch), accessible through

Target's mobile application, and posted on each store's front-of-store policy board (which is designed to be visible to guests upon entry or exit). *Id.* The Price Match Guarantee was in effect at the time of Plaintiff's purchases and applied to Plaintiff's purchases. LeBlanc Dec. at ¶¶ 9-11. Indeed, it applies to all purchases made at Target so long as the criteria are met. *Id.* ¶ 10. As published on Target.com, it states that consumers can "request a price match at checkout" by "bringing proof of the price" the consumer wants to match, including the advertisement that includes the price and "the original receipt if [the consumer] already purchased the item." *Id.* ¶ 12. An item qualifies for a price match if "it's an eligible Target product, bought from a Target today, or within the past 14 days" and if "the price is lower right now" from a "local Target store." In short, "just bring in the proof and we **will** adjust your payment to the lower price." *Id.* (emphasis added). Had Plaintiff showed the shelf price for the crackers to a Target employee on August 2, 2022 (or indeed anytime up through August 16, 2022), Target would have honored the lower advertised price and refunded Plaintiff the $.60 difference. *Id.* ¶ 13.

Another material term of the parties' contract was Target's Return Policy. Like the Price Match Guarantee, the Return Policy is well publicized, was in effect at the time of Plaintiff's purchases, applied to Plaintiff's purchases, and applies to all purchases made at Target so long as the criteria are met. *Id.* ¶¶ 14, 16-18. Indeed, although Plaintiff did not include a picture of it in his Complaint, the reverse side of Plaintiff's receipt would have listed the website for Target's Return Policy (Target.com/returns)—all receipts printed at a Target store include that information. *Id.* ¶¶ 14-15. Pursuant to the Return Policy, Plaintiff could have returned any of the items he purchased for any reason, including that the price that was advertised did not match the price he paid at checkout. *Id.* ¶ 19.

Taken together, the receipt, the accuracy levels alleged by Plaintiff, the price match guarantee, and the return policy show that, like in *Tudor*, Plaintiff has failed to allege that Target made a deceptive statement or that Target intended for Plaintiff to rely on any allegedly deceptive statement. These facts—which are in and integral to the Complaint—undercut the purely conclusory allegations in the Complaint that Target "deceives consumers into paying more" than the shelf price. Cmplt. ¶ 30. The foregoing factual allegations show instead that even though pricing discrepancies can and do occur, they are uncommon, and Target makes every effort to avoid them and charge (and collect payment for) only the price that is advertised.

### 2. *Plaintiff Fails to Plausibly Allege that the Price Discrepancy Proximately Caused Him Harm*

A "plaintiff must actually have been deceived by the defendant's alleged misrepresentations of fact," and where a plaintiff is "aware" that advertised prices "may not reflect the actual prices," the alleged deception cannot as a matter of law be the proximate cause of any harm. *QVC*, 382 Ill. App. 3d at 631. The facts alleged in the Complaint undermine the conclusory allegation that Plaintiff "would not have purchased" the products "but for the advertised [price]." Cmplt. ¶ 27.

The Complaint here includes allegations that, based "on information and belief," there were discrepancies between the shelf price and the checkout price at Target stores in January through August 2022 in New York, New Jersey, Pennsylvania, Maryland, and Illinois. The purchases at these stores occurred prior to Plaintiff's purchases and appear to have included some of the same products that Plaintiff purchased: Dots, which were allegedly mispriced when purchased in June 2022 (Cmplt. ¶ 37), were not mispriced when they were purchased by Plaintiff on August 2, 2022.

*Id.* ¶ 23a.[8]  Furthermore, as noted above, Plaintiff travelled from Ohio to Illinois (*id.* ¶¶ 12-13), made a small number of purchases at both Target and a nearby Walmart on the same day (*id.* ¶¶ 13 & 23; *see supra* p.1 at n.1); compared the prices on his receipt to the prices on the shelf after his purchases and photographed his receipt next to the shelf prices (*id.*), and then filed two nearly identical lawsuits in this Court a week later.  *Id.*  This behavior is not consistent with being *surprised* by a price discrepancy—it is consistent with *expecting* a price discrepancy.

### B.  Plaintiff Fails to State a Claim Under IUDTPA

Like his ICFA claim, Plaintiff's IUDTPA claim (Count II) is facially defective and should be dismissed.  First, "for a violation of the IUDTPA, a misleading statement also is required." *Robinson v. Walgreen Co.*, No. 20cv50288, 2022 WL 204360, at *7 (N.D. Ill. Jan. 24, 2022) (dismissing IUDTPA claim after dismissing ICFA claim).  Here, for the reasons discussed above, Plaintiff fails to allege that Target makes any deceptive statement.

Second, the only remedy available under the IUDTPA is injunctive relief.  *See* 815 ILCS 510/3.  But Plaintiff cannot state a claim for injunctive relief "because he [has] failed to sufficiently allege that [Target's] conduct will likely cause him harm in the future." *Camasta*, 761 F.3d at 740 (citing *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 9 (1st Dist. 2009)).  Specifically, in support of his IUDTPA claim, Plaintiff alleges that he "and Class members are likely to be misled and overcharged in the future."  Cmplt. ¶ 84.  But Plaintiff's claim is based "on the conjecture that because [Target] harmed him in the past, they are likely to harm him in the future." *Camasta*, 761 F.3d at 740.  As the Seventh Circuit explained in *Camasta* in dismissing the plaintiff's IUDTPA claim, "[s]ince [the plaintiff] is now aware of [the

---

[8] The Complaint alleges additional purchases "in August 2022," in Illinois and North Carolina (Cmplt. ¶¶ 38, 39, 46), but it is not clear whether these purchases occurred before Plaintiff's purchases on August 2, 2022.

defendant's] sales practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. Plaintiff does not allege that he intends to continue shopping at Target, and like the plaintiff in *Camasta*, he is and has been aware of the conduct he contends is deceptive.

### C. Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim (Count V) fails for the same reason that his ICFA and IUDTPA claims fail. While Plaintiff does not specify what law applies, under Illinois law, unjust enrichment is not a standalone claim. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). Thus, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Plaintiff's unjust enrichment claim arises from the same purported conduct as his other claims. *See* Cmplt. ¶¶ 107-117. Consequently, the unjust enrichment claim fails, too.

### D. Plaintiff Fails to State a Claim Under the Laws that are "Similar" to ICFA and IUDTPA

Plaintiff made his purchases in Illinois. Illinois law applies to those claims but does not apply to purchases outside of Illinois. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 190-91 (Ill. 2005) (ICFA does not apply extraterritorially); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011) (IUDTPA does not apply extraterritorially). Consequently, Plaintiff purports to assert claims under the consumer fraud laws of 31 different states (Count III) and unfair trade practices claims under the laws of 14 different states (Count IV). *See* Cmplt. ¶¶ 49-50, 87-106. However, Plaintiff does not even fully identify the laws under which he is asserting claims: he states that "discovery may alter" the states that he contends have laws similar to ICFA and IUDTPA. Cmplt. ¶¶ 49 n.9 & 50 n.10. But Plaintiff should not require

discovery to identify states with "similar" laws and cannot adequately state a claim under laws he has failed even to identify in his Complaint.

Moreover, and in any event, Plaintiff has failed to state a claim under ICFA and IUDTPA, and "because [he] has not adequately pleaded [his claims] under Illinois law[,] . . . he cannot represent either an Illinois class . . . or a multi-state class." *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015). Consequently, Counts III and IV should be dismissed.

## CONCLUSION

WHEREFORE, Defendant Target Corporation respectfully requests that this Court transfer this case to the U.S. District Court for the District of Minnesota or, in the alternative, if it reaches the merits, the Court should grant its motion to dismiss in its entirety and with prejudice.

Dated: October 19, 2022

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Justin O. Kay*
Justin O. Kay (ARDC No. 6286557)
Matthew M. Morrissey (ARDC No. 6302575)
Sophie H. Gotlieb (ARDC No. 6332739)
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606-1698
Tel.: (312) 569-1000
Fax: (312) 569-3000
Email: justin.kay@faegredrinker.com
Email: matthew.morrissey@faegredrinker.com
Email: sophie.gotlieb@faegredrinker.com

*Attorneys for Defendant Target Corporation*