**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

YORAM KAHN, individually and )
on behalf of all others similarly situated, )
       )
           Plaintiff, )
       )    No. 22 C 4178
     v. )
       )    Judge Ronald A. Guzmán
TARGET CORPORATION, )
       )
           Defendant. )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is defendant's motion to transfer this case to the United States District Court for the District of Minnesota under 28 U.S.C. § 1404(a) or in the alternative to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, defendant's motion to transfer is granted, and the Court leaves Rule 12(b)(6) matters to the transferee court.

## BACKGROUND

Plaintiff, Yoram Kahn, filed this putative class action against Target Corporation ("Target") for consumer fraud. Plaintiff alleges that he purchased two kinds of Ritz crackers at a Target store in Niles, Illinois, for which the shelf price was advertised as 30 cents less than what he paid at checkout. Plaintiff further alleges that nationwide, Target frequently falsely advertises one price for certain merchandise on its shelf signs and displays only to charge a higher price at checkout and that it has been fined by at least two state agencies for charging higher prices than it had advertised.

In his complaint, plaintiff asserts claims for violation of the following: the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (Count I) and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (Count II), on behalf of a class of persons who purchased merchandise from a Target store in Illinois and paid higher prices than what was advertised on the shelf; the consumer-protection laws of Illinois and approximately thirty other states with "similar laws" (Count III), on behalf of a class of persons who purchased merchandise from a Target store in those states and paid higher prices than what was advertised on the shelf; and the Uniform Deceptive Trade Practices Act (Count IV), on behalf of a class of persons who purchased merchandise from a Target store in Illinois or any of nearly fifteen other states with "similar" UDTPA laws and paid higher prices than what was advertised on the shelf. In Count V, plaintiff pleads in the alternative that Target was unjustly enriched and asserts the claim on behalf

of a nationwide class of persons who purchased merchandise from a Target store in the United States and paid higher prices than what was advertised on the shelf. (ECF No. 1, Compl.)

Target, which is incorporated and has its principal place of business in Minnesota, moves to transfer this action to the United States District Court for the District of Minnesota under 28 U.S.C. § 1404(a) and in the alternative to dismiss the action under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

District courts may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is proper under § 1404(a) when "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice." *S. Capitol Bridgebuilders v. Lexington Ins.*, No. 20 C 3894, 2021 WL 1426888, at *2 (N.D. Ill. Apr. 15, 2021); *see also In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020) (when deciding whether to transfer a case under § 1404(a), a district court must evaluate both the convenience of the parties and various public-interest considerations). Weighing the "factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); *see also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010) (§ 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on a case-by-case consideration of convenience and fairness and permits a "flexible and individualized analysis"). As the party seeking transfer, Target has the burden of showing that the transferee forum is "clearly more convenient." *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Rsch. Automation*, 626 F.3d at 978.

The parties do not dispute that venue is proper both here and in the District of Minnesota. Therefore, the Court need consider only whether convenience and the interests of justice weigh in favor of transfer. With respect to convenience, courts generally consider factors such as plaintiff's forum choice, the location of material events, the convenience of the parties and witnesses, and the relative ease of access to sources of proof. *Id.* at 978; *S. Capitol Bridgebuilders*, 2021 WL 1426888, at *2.

The first convenience factor at most weighs only very slightly against transfer. Normally, "a plaintiff's choice of forum is afforded deference so long as the chosen forum is related to the case," *Rsch. Automation*, 626 F.3d at 979, but there are three reasons to discount this element in this case. First, the choice is given less weight when it is not plaintiff's home forum. *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 930 (N.D. Ill. 2017); *Chambers v. N. Am. Co. for Life & Health Ins.*, No. 11 C 3528, 2011 WL 5868214, at *3 (N.D. Ill. Nov. 18, 2011). Plaintiff lives in Ohio, not Illinois; he was "traveling" in Illinois when he purchased crackers at the Niles Target. (Compl. ¶ 13.) He contends that his choice to file suit here is entitled to deference because he "visits family and friends residing in this judicial district," (ECF No. 37, Pl.'s Resp. at 6), but cites

no authority for the proposition that occasional visits should be treated like residency for the purposes of § 1404(a), and the Court does not find them equivalent. Second, courts greatly discount the weight given to a plaintiff's choice of forum in putative class actions, particularly when a nationwide class is alleged, as it is here. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009); *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014); *Lafleur v. Dollar Tree Stores, Inc.*, No. 11 C 8473, 2012 WL 2280090, at *3 (N.D. Ill. June 18, 2012). Third, the choice is less important when the forum has relatively weak connections with the operative facts giving rise to the claim. *Weber-Stephen Prods., LLC v. Char-Broil, LLC*, No. 16 C 4483, 2016 WL 5871505, at *4 (N.D. Ill. Oct. 5, 2016); *Post Media Sys. LLC v. Apple Inc.*, No. 19 C 5538, 2020 WL 833089, at *2 (N.D. Ill. Feb. 20, 2020). Although plaintiff made his purchases in Illinois, he alleges that Target has engaged in unfair and deceptive pricing practices nationwide and cites several specific examples that allegedly occurred in other states. He also asserts that Target knows that it overcharges its customers yet allows its stores to continue the practice and elects not to implement "institutional systemic controls." (Compl. ¶ 31.) Given these allegations about Target's knowledge and conduct, the connection to Illinois is not particularly strong.

The parties dispute the location of material events. Target says that because this case is about deceptive advertising, the material events occurred at Target's headquarters in Minnesota, where it allegedly engaged in the relevant pricing decisions and related activities. Plaintiff argues that "[e]very portion of the tort [he] experienced physically occurred" in Illinois and the fact that Target made its decisions in Minnesota, while relevant, does not move the location of material events away from Illinois. (Pl.'s Resp. at 7.) In the Court's view, the material events in this case concern not so much plaintiff's purchases (the significance of which is undercut by the allegations that consumers across the country experience the same pricing practices) as Target's alleged conduct—its decisions to charge consumers across the country more than the price displayed on shelves and refrain from implementing controls to prevent that practice. Such decisions would have been made at Target's headquarters in Minnesota, not at the level of an individual store, so this factor weighs in favor of transfer. *See Jaramillo*, 664 F. Supp. 2d at 914 (in a class action for consumer fraud and unjust enrichment in which plaintiff alleged that the defendant restaurant chain misrepresented nutritional information on menus nationwide, the location of material events was the headquarters of the defendant restaurant chain); *Lafleur*, 2012 WL 2280090, at *4 (in a class action for FLSA violations at retail stores, concluding that this factor favored transfer to Virginia, where the store chain is headquartered, and noting that defendant's "conduct in Virginia is material to all of the claims brought by Plaintiffs in the complaint, whereas the events at each store location are primarily material as to only the individuals who worked there").

In assessing the convenience of the parties, "the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum." *S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at *4 (N.D. Ill. July 28, 2005). Target contends that it is more convenient and cost-effective for it to litigate near its headquarters in Minnesota. Plaintiff responds that Target's financial resources are vast and it has litigated many cases in districts outside Minnesota without moving to transfer. Plaintiff cites no authority supporting the proposition that Target's position on transfer in other class actions is properly part of the § 1404(a) analysis, and the Court declines to consider it. Plaintiff also argues that moving the case to Minnesota would be less convenient for him because he can stay with

3

family and friends in Chicago without having to pay for a hotel and Chicago is half the drive from his home in Ohio and "more accommodating" than Minneapolis for practicing his religion in terms of access to kosher food and a synagogue. (ECF No. 37-1, Decl. of Yoram Kahn at 1.) The Court finds that this factor is neutral. The circumstances plaintiff describes reflect his personal travel preferences but do not indicate that it would be unduly burdensome for him to travel to Minnesota, and given that he chose a forum that is not his home forum, those preferences receive little weight. Transfer would enable at least one of the parties to litigate in its home forum, but that consideration is offset by the fact that Target has the greater ability to bear the costs of litigating in a foreign forum. The convenience of the witnesses, however, favors transfer. The parties discuss various aspects of convenience with regard to Target's employees, with Target focusing on its employees located in Minnesota and plaintiff focusing on Target's employees at the Niles, Illinois store, but the convenience of employee witnesses is given little weight because it is presumed that they will appear voluntarily. *See Kammin v. Smartpros, Ltd.*, No. 07 C 2665, 2007 WL 3046128, at *2 (N.D. Ill. Oct. 9, 2007); *Sutton v. Apple Inc.*, No. 10 C 8176, 2011 WL 2550500, at *4 (N.D. Ill. June 23, 2011) ("In determining which venue is more convenient to witnesses, the court should focus on convenience of potential non-party witnesses as opposed to witnesses within control of the party calling them, who will usually appear voluntarily."). What tips the balance in favor of transfer with this factor is the convenience of non-party witnesses. Plaintiff identifies none, but Target submits the declaration of Amanda LeBlanc, its Lead Business Partner for Store Operations, who states that she expects testimony may be required from third parties in the Minneapolis area who are former members of Target's Store Operations and Pricing Compliance teams, including the recently retired Senior Director of Compliance. (ECF No. 28-1, Decl. of Amanda LeBlanc ¶¶ 1, 5.) Plaintiff deems these witnesses "party-controlled" but does not explain the basis for this assertion. (Pl.'s Resp. at 10.) These witnesses, as *former* employees, are not necessarily under Target's control, and they are beyond the Court's 100-mile subpoena power.

As for the relative ease of access to sources of proof, Target submits that this factor slightly favors transfer because relevant documents about its corporate-wide decisions are located in Minnesota. But plaintiff maintains that the Niles, Illinois Target store "likely" possesses relevant video footage, electronic pricing scanners and scanner data, and store-specific records and payment data. (Pl.'s Resp. at 8.) Target replies that plaintiff is incorrect, and it supplies a supplemental declaration from Ms. LeBlanc in which she states that this kind of store information is "aggregated and accessed" at and would be produced from Target's headquarters. (ECF No. 41-2, Suppl. Decl. of Amanda LeBlanc ¶¶ 3-5.) Therefore, this factor favors transfer, but only slightly, in view of modern technology's rendering the location of documents and other sources of proof only "minimally important" in the transfer analysis. *See D5 Ironworks, Inc. v. Local 395 Ironworkers*, No. 16 C 2163, 2016 WL 2733307, at *4 (N.D. Ill. May 11, 2016).

In addition to weighing the private interests of the parties, the Court considers the interests of justice by evaluating factors such as each court's relative familiarity with the relevant law, docket congestion and likely speed to trial, the relationship of each community to the controversy,

and the respective desirability of resolving controversies in each locale.[1]  *See, e.g.*, *Ryze*, 968 F.3d at 708; *S. Capitol Bridgebuilders*, 2021 WL 1426888, at *4.  The courts' familiarity with applicable law is a neutral factor.  This case turns on questions not only of Illinois consumer-protection law but also the corresponding laws of more than thirty other states, including Minnesota.  Furthermore, plaintiff fails to identify any features of the Illinois statutes at issue that are arcane or unique such that this Court's experience with them would have much significance.

To assess the speed-to-trial factor, the Court turns to federal-court statistics.  The most recent data show that the median time from filing to disposition for civil cases in the Northern District of Illinois is 7.3 months, compared with 5.8 months in the District of Minnesota, and the median time from filing to trial for civil cases in the Northern District of Illinois is 47.3 months, compared with 31.8 months in the District of Minnesota.  *See* Table C-5, U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2022, https://tinyurl.com/bdehx8u7.  Plaintiff contends that the Court should also consider the weighted filings per judge in each forum, but the Court finds the data on time to disposition and trial more directly relevant.  Because the parties would likely have a more expeditious resolution in Minnesota, this consideration weighs in favor of transfer.

The final two factors, the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy, weigh in favor of transfer.  Plaintiff was harmed in Illinois and asserts claims on behalf of an Illinois class.  Nevertheless, he also seeks to represent multi-state and nationwide classes based on allegations that Target's conduct occurred in stores nationwide and affected consumers across the country, so Illinois is merely one of the many states that have an interest in the case, as is Minnesota.  Illinois may have a slightly greater connection with the case than the other states by virtue of its being the place where the named plaintiff suffered harm, but Minnesota, as the location of Target's headquarters and decision-making from which the allegedly deceptive policies emanated, has a greater interest in resolving this case.  *See Morris v. Am. Bioscience, Inc.*, No. 03 C 7525, 2004 WL 2496496, at *5 (N.D. Ill. Nov. 3, 2004); *FTC v. Am. Tax Relief LLC*, No. 10 C 6123, 2011 WL 2893059, at *8 (N.D. Ill. July 20, 2011).

In sum, the convenience factors and the interests-of-justice factors strongly favor Minnesota; therefore, the Court will transfer the case to the District of Minnesota.  In light of the transfer, the Court will not reach defendant's motion in the alternative to dismiss; that matter is for

---

[1]  Plaintiff contends that an additional consideration is relevant here, namely, when "substantial efficiency gains can . . . be realized by keeping parallel, or nearly so, class actions in one district." (Pl.'s Resp. at 11-12 (punctuation modified).)  Plaintiff says that on the same day he filed the instant suit, he filed a similar suit in this district against Walmart (which is pending before a different judge), and he asserts that if the Walmart action remains here and the instant suit is transferred to Minnesota, there is a risk of "judicial disharmony" on the sorts of issues raised in Target's motion in the alternative to dismiss.  (*Id.* at 13.)  The Court is not persuaded.  The fact that plaintiff alleges the same kind of consumer-fraud claims against Walmart does not make the two actions "parallel" or nearly so.  The defendants and the underlying facts, not to mention many of the likely class members, are completely different.

the transferee court. Likewise, defendant's pending motion to deny class certification and plaintiff's motion to strike the motion to deny certification are terminated and may be renewed before the transferee court.

## CONCLUSION

Defendant's motion to transfer this action to the United States District Court for the District of Minnesota [27] is granted. This action is transferred to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a). The Clerk of Court is directed to effectuate the transfer forthwith. All pending motions are terminated. Civil case transferred and terminated on this court's docket.

**DATE:** March 1, 2023

**Hon. Ronald A. Guzmán**
**United States District Judge**

6